IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DEBBIE B.,[1]

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,[2]

    Defendant.

Case No. 6:17-CV-01590-AA
**OPINION AND ORDER**

---

AIKEN, District Judge:

Plaintiff Debbie B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner found Plaintiff disabled and awarded Disability Insurance Benefits pursuant to Title II and Supplemental Security Income pursuant to Title XVI of the Social Security Act as of February 4, 2016 but did not find that Plaintiff was disabled before this date. For

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not yet been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

Page 1 – OPINION AND ORDER

the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED for an immediate award of benefits.

## BACKGROUND

In November 15, 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") that alleged disability since July 15, 2013. Plaintiff based her request for benefits on back conditions, hypothyroidism, obesity, and asthma. Plaintiff's DIB and SSI applications were initially denied on March 19, 2014, and upon reconsideration, with the reconsideration denial dated September 11, 2014. An administrative hearing was held before an Administrative Law Judge ("ALJ") on June 1, 2016. At the hearing, Plaintiff testified and was represented by council. A vocational expert ("VE") also testified. On July 8, 2016, the ALJ issued a partially favorable decision finding that Plaintiff became disabled on February 4, 2016. Plaintiff sought review by the Appeals Council which was denied on August 7, 2017 and Plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014)

(citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon Plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1484 (9th Cir. 1986). To meet this burden, Plaintiff must demonstrate and "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id* § 416.920(a)(4). At step one, the ALJ found Plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 22; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found Plaintiff had the following severe impairments: "obesity; degenerative disc disease; lumbar post-laminectomy syndrome with an L4-S1 fusion; and bilateral leg edema; 20 C.F.R. §§ 404.1520(c); *id.* §§ 416.920(c)." Tr. 22. At step three, the ALJ determined that since the alleged onset date of disability July 15,

2013, Plaintiff's impairments, whether considered singly or in combination, did not meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed Plaintiffs residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e); *id.* §§ 416.920(e). The ALJ found that Plaintiff had:

> The residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416(a) except she can lift, carry, push, pull, and pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk for four hours each in an eight-hour day. She can sit for two hours at a time, but then will need to stand or walk for no more than five minutes before resuming a seated position. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can tolerate no exposure to hazards such as machinery and unprotected heights.

Tr.24. At step four, the ALJ concluded that since July 15, 2013, Plaintiff could not perform her past relevant work. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Additionally, the ALJ found that prior to February 4, 2016, the Plaintiff was not disabled, but on that date, Plaintiff's age category changed to an individual closely approaching advanced age. Tr. 28; 20 C.F.R. §§ 404.1563 and 416.963. The ALJ continued to step five and found that between July 13, 2015 and July 4, 2016, Plaintiff could perform work existing in the national economy. The ALJ based this decision on Plaintiff's age, education, work experience, and RFC, and determined that Plaintiff could have performed the requirements of occupations like the following: a bench hand, table worker, or a stem mounter. Tr. 29; 20 C.F.R. §§ 404.1520(a)(4)(v),

(g)(1). Accordingly, the ALJ found Plaintiff was not disabled for that time and denied her applications for benefits prior to February 4, 2016.

## DISCUSSION

Plaintiff alleges that the ALJ erred in four ways in determining that she was not disabled before July 4, 2016. First, the ALJ improperly determined that Plaintiff was not a reliable source for subjective symptom testimony. Second, the ALJ failed to provide specific germane reasons for discounting the lay witness testimony of Plaintiff's roommate. Third, the ALJ failed to provide legally sufficient reasons for discounting medical opinions of treating physician, Dr. Beckstrand, and Plaintiff's surgeon, Dr. Angeles. Fourth, the ALJ failed to adequately account for Plaintiff's sitting and standing limitations when questioning the VE and in determining Plaintiff's RFC. It is not disputed that Plaintiff is disabled, the dispute is over the onset date of Plaintiff's disability. I address each of Plaintiff's arguments in turn.

I. *Subjective Symptom Testimony*

Plaintiff claims the ALJ failed to give specific, clear and convincing reasons for rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage, absent evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's

testimony regarding the severity of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not fully supported." Tr. 25.

The ALJ stated that "[t]he medical record partially supports the severity of the claimant's symptoms." *Id.* The ALJ then summarized the medical record but did not identify any specific testimony or explain how that testimony was inconsistent with the record. A general assertion that the claimant is not credible is insufficient; the ALJ must "state which...testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The only specific reason that the ALJ provided for discounting Plaintiff's testimony was that Plaintiff's reported daily activities "support[ed] that [Plaintiff] was able to function at a reduced range of sedentary level of exertional work activity." Tr. 26.

ALJs must be "especially cautions in concluding that daily activities are inconsistent with testimony about pain because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v.*

*Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Id.*

Plaintiff's activities revolved around self-care and include her doing household chores like laundry or dishes, drive, take short walks, cooking small meals, baking, going to the store, and occasionally going out to dinner with friends. Tr. 26. The ALJ failed to explain how those activities contradict her other testimony, are transferrable to a work setting, or demonstrate an ability to spend a substantial part of the day engaged in such activities.

Moreover, Plaintiff's activities do not demonstrate an ability to maintain regular employment, especially considering the frequent breaks that Plaintiff took while completing those activities. During the hearing, Plaintiff testified that,

> [I]f I try to get groceries or something like that, I go home, and my legs are so painful just from the swelling and everything ... I put the groceries on the counter, I go sit down, get my legs up for a half-hour, go try to put groceries away, and then – you know, it's a process of – anything I do like that, I have to take a break and go sit down. [Regarding grocery shopping] ... I use the cart. I lean over the cart ... I go extremely slow because the legs give out at any point in time ... It takes me quite a while to slowly go through the store, but if I could keep moving at a small pace – just know where my groceries are and I just get them and I leave ... By the time I'm done, I sit in my truck in tears.

Tr. 175-176. In her November 8, 2013 Function Report, Plaintiff stated that taking frequent rests was an integral part of completing her daily activities, "I am able to get breakfast. Getting ready for my day takes me at least an hour. Then I need to rest due to my pain." Tr. 356. This was corroborated by her roommate who stated in a 2014 Function Report that Plaintiff's cooking habits had changed since her conditions began and now "[s]he takes breaks frequently when prepping meals." Tr.

422. Plaintiff also consistently reported spending most of her days reclined with her legs elevated, and her reports are corroborated by Dr. Beckstrand's medical opinion and her roommate's statement. Tr. 72, 175, 286, 464, 1223, 1385, 1269.

In sum, the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence to discredit Plaintiff's symptom testimony.

II. *Lay Witness Testimony*

Plaintiff alleges that the ALJ improperly rejected the lay witness testimony of her roommate, Mark Bryan.

Lay witness testimony regarding the severity of a claimant's symptoms or how impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015). Further, the reasons provided must also "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).

Mr. Bryan provided written statements in February 2014 and May 2016. He indicated that he has known the claimant for five and a half years and, during that time, she suffered from severe back pain. Tr. 420. He stated that functionally, Plaintiff had difficulty with various activities including lifting, squatting, bending, standing, reaching, walking, kneeling, climbing, as well as memory, concentration, and completing tasks. Tr. 425. Mr. Bryan also reported that Plaintiff suffered from severe back pain, with shooting pain down her back, and swelling in her legs. He also

indicated that claimant spent significant time confined to her bed or recliner because of her back pain. Tr. 464.

The ALJ determined that "[s]ignificant weight could not be granted to the statements" because "they are not consistent with the preponderance of medical and other evidence of the record." Tr. 27. However, the ALJ's reasoning is not sufficiently specific. The ALJ did not explain which portions of Mr. Bryan's statements were inconsistent with other evidence. Accordingly, the ALJ erred in failing to provide legally significant reasons for rejecting the testimony of the witness.

The Commissioner argues that, to the extent that the RFC is inconsistent with Mr. Bryan's statements, the ALJ's error is harmless because the ALJ's reasons for discounting Plaintiff's subjective complaints apply with equal force to the allegations of her roommate. Where the ALJ has provided clear and convincing reasons for rejecting a plaintiff's symptom testimony, and the lay witness has not described limitations beyond those alleged by the plaintiff, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless error. *Molina,* 674 F.3d at 1121-22. Because I concluded that the ALJ failed to provide clear and convincing reason's for rejecting Plaintiff's symptom testimony, the ALJ's error in rejecting Mr. Bryan's lay witness testimony is not harmless.

III. *Medical Opinion Evidence*

Plaintiff next challenges the ALJ's treatment of the medical opinions of treating physicians Dr. Carmina Angeles and Dr. Katherine Beckstrand.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Angeles

Dr. Angeles performed Plaintiff's four spinal procedures and surgeries. In November 2013, after Plaintiff's second spinal surgery, Dr. Angeles opined that Plaintiff would not be able to return to work because of disabling chronic back and leg pain. Tr. 739. In April 2014, Dr. Angeles opined that Plaintiff's pain was "quite debilitating to the point that she is unable to work and also carry out daily functional activities." Tr. 1108. She performed a third spinal surgery the following month. Tr. 928-31. In May 2015, Dr. Angeles opined that Plaintiff "ha[d] been unable to work for two years because of disabling pain when sitting/standing for a prolonged period." Tr. 1163. She also opined that Plaintiff was limited to sitting for fifteen minutes, standing for twenty minutes, and was unable to carry out activities of daily living due to back and leg pain. *Id.* In April 2016, Dr. Angeles opined that Plaintiff's symptoms would cause her to be absent from work more than four days per month. Tr. 1323.

The ALJ gave Dr. Angeles's November 2013, May 2015, and April 2016 opinions regarding Plaintiff's inability to work "partial weight." The ALJ reasoned

"the ability to work is not within the doctor's expertise" and "the issue of disability is one that is reserved to the Commissioner." Tr. 27 (citing SSR 96-5p).

The ALJ is correct that the "final responsibility for deciding certain issues, such as whether an individual is disabled under the Act, is reserved to the Commissioner." SSR 06-03p, 2006 WL 2263437 (citing 20 C.F.R. § 404.1527). However, "an ALJ may not simply reject a treating physician's opinions on the ultimate issues of disability." *Ghanim*, 763 F.3d at 1161. Instead, "[if] the treating physician's opinion on the issue of disability is controverted the ALJ must still provide specific and legitimate reasons in order to reject the treating physician's opinion." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

Plaintiff argues that her case is similar to *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012). In *Hill*, an examining psychologist opinion that the claimant's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely." *Id.* at 1159. The ALJ did not mention that opinion. The Commissioner argued that the error was harmless because the ultimate issue of disability is reserved to the Commissioner. The Ninth Circuit disagreed and reasoned that the examining psychologist's statement that the claimant "would be 'unlikely' to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of [the claimant's] *likelihood* of being able to sustain full time employment given the many medical and mental impairments [the claimant] faces and her inability to afford treatment for those conditions." *Id.* at 1160 (emphasis in original).

Here Dr. Angeles' opinion was also not a conclusory statement that Plaintiff was disabled. Instead, her opinion was an assessment, based on objective medical evidence and Plaintiff's symptom allegations, of Plaintiff's ability to function at work in November 2013, May 2015, and April 2016 given the pain Plaintiff was experiencing. Accordingly, the ALJ erred in rejecting Dr. Angeles's opinion without providing a specific and legitimate reason supported by substantial evidence.

The ALJ also gave little weight to Dr. Angeles's opinion regarding Plaintiff's absenteeism because the "opinion is speculative and it is not possible to predict how often the claimant would be absent from work." *Id.* This opinion consisted of a box checked on a standardized form that was not supported by any explanation. Tr. 1323. An ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111 (alterations normalized). Accordingly, the ALJ did not err in rejecting this opinion.

Finally, the ALJ did not address Dr. Angeles's opinion regarding Plaintiff's sitting and standing limitations. Although that was error, it was harmless. Dr. Angeles' opinions that Plaintiff could not sit for fifteen minutes or stand for twenty minutes related to Plaintiff's ability to sit or stand at one time before changing positions. Tr. 176-78, 1385. At the hearing, the VE testified that the representative occupations allowed for a sit-stand option. Tr. 188.

In sum, the ALJ erred in rejecting Dr. Angeles' opinions regarding Plaintiff's ability to work and in disregarding her opinion regarding Plaintiff's sitting and standing limitations, but the latter was harmless.

B. *Dr. Beckstrand*

Dr. Beckstrand has been Plaintiff's primary care physician since January 2014. Tr. 1384. In May of 2016, Dr. Beckstrand completed a medical evaluation questionnaire and opined that Plaintiff was limited to standing or walking for a total of four hours a day and sitting for four hours a day and that Plaintiff could not sit or stand for more than thirty minutes at one time. Tr. 1486. Dr. Beckstrand also opined that Plaintiff needed to lie down or rest and recline for ten to fifteen minutes every thirty to sixty minutes, that Plaintiff would miss more than four workdays per month, and that Plaintiff required two recovery days after each work day. Tr. 1385, 1388. The ALJ gave "great weight" to Dr. Beckstrand's sitting and standing limitations and explained that "these limitations have been accommodated" in the RFC. Tr. 26-27. The ALJ gave the other opinions little weight because "some of these limitations were based on [Plaintiff's] self-report ... and are not supported by the totality of the medical evidence of record." Tr. 27.

First, Dr. Beckstrand's reliance on Plaintiff's subjective symptom testimony in assessing Plaintiff's need to rest after activity does not constitute a specific and legitimate reason for assigning little weight to her opinion as a treating physician. As discussed in a previous section, the ALJ improperly discredited Plaintiff's subjective symptom testimony. Second, the ALJ's reasoning that "some of these limitations are not supported by the totality of the medical evidence in the record" lacks specificity. The ALJ does not note which limitations are unsupported by the medical evidence or explain how the evidence undermines Dr. Beckstrand's opinions.

Page 13 – OPINION AND ORDER

Thus, the ALJ erred in discounting Dr. Beckstrand's opinions regarding Plaintiff's need for rest periods, absenteeism, and recovery days.

## IV. *Residual Functional Capacity Determination*

Plaintiff argues that the ALJ's hypothetical and RFC did not incorporate Dr. Beckstrand's sitting and standing limitation opinion, to which the ALJ assigned "great weight" and stated "ha[d] been accommodated in the ... residual functional capacity." Tr. 25. As mentioned, Dr. Beckstrand opined that Plaintiff could not sit or stand for more than thirty minutes at a time. Tr. 1386. However, the RFC found Plaintiff capable of "sit[ting] for two or more hours at a time" and did not account for any limitation in the amount of time she could stand at once. Tr. 24.

The Commissioner disputes whether the ALJ credited that portion of Dr. Beckstrand's sitting and standing opinion. The Commissioner argues that the ALJ rejected that opinion and did not err in doing so. Alternatively, the Commissioner argues that any error was harmless. Because the VE testified that the representative occupations allowed for a sit-stand option, I agree that any error was harmless.

## V. *Type of Remand*

The only remaining question is whether to remand for further proceedings or an immediate award of benefits. Pursuant to the Ninth Circuit's "credit-as-true" doctrine, I must undertake a three-step inquiry to answer that question. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). As explained below, Plaintiff's testimony, lay witness testimony, and Dr. Beckstrand's opinion about Plaintiff's need to recline and elevate her legs, when credited as true, mandate a disability finding.

First, for the reasons described above, I conclude that the ALJ harmfully erred by (1) failing to provide clear and convincing reasons to discredit Plaintiff's testimony about her physical limitations; (2) improperly weighing the lay witness testimony from Plaintiff's roommate; (3) improperly rejecting Dr. Angeles's opinion about Plaintiff's ability to work; and (4) improperly rejecting Dr. Beckstrand's opinions about Plaintiff's need for rest periods, absenteeism, and recovery days. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016).

Second, I must determine whether the record has been fully developed and whether further administrative proceedings would be useful. *Id.* The evidence in the record consistently demonstrates that Plaintiff experienced severe back and leg pain, leg swelling, and limited mobility and took frequent breaks to recline and elevate her legs to relieve that pain and swelling during the relevant period. Although the Commissioner points to reported activities that the ALJ overlooked in assessing Plaintiff's symptom testimony, none of that evidence establishes that there are outstanding issues left to be resolved. Specifically, the Commissioner cites Plaintiff's May 2016 coast trip with her family and notes that she reported that they went to a festival, which exacerbated her pain because of "all the walking." Tr. 179. However, Plaintiff also reported that the festival only spanned half a block and that "by the time [she] got to the end, [she] could hardly walk back down." *Id.* Moreover, while her family went clamming and otherwise enjoyed the coast, Plaintiff spent most of the time in the trailer, reclining with her legs up. Tr. 178-79. Because, as discussed

below, Plaintiff's need to recline precludes competitive work, it is not clear what purpose further development of the record would serve.

Third, I conclude that "if the improperly discredited evidence" regarding Plaintiff's need to recline were credited as true, "the ALJ would be required to find the claimant disabled on remand." *Dominguez*, 808 F.3d at 407. At the hearing, the VE testified that reclining for ten to fifteen minutes every thirty to sixty minutes is "unacceptable in the workplace" and that a person with that limitation and Plaintiff's age, education, work experience, and RFC could not perform any jobs. Tr. 189-90. Crediting Dr. Beckstrand's opinion, Plaintiff's symptom testimony on which that opinion was based, and Mr. Bryan's testimony, the record compels the conclusion that Plaintiff would need to take frequent rests to recline at work. Such a limitation mandates a finding of "disabled."

Finally, I may consider whether the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act. *Dominguez*, 808 F.3d at 407–08. There is no such serious doubt with respect to Plaintiff's residual pain, limited mobility, and required accommodations as the result of her four spinal surgeries over three years. As noted, those who have observed Plaintiff firsthand have documented remarkably similar, consistent problems in her ability to successfully navigate her life without frequently taking breaks to rest.

In sum, the Plaintiff has established that she is disabled and has been since the alleged date, July 15, 2013. Her testimony was credible and consistent with the medical evidence. The VE testimony shows that she is ineligible for competitive

employment. Remanding this case for further proceedings would serve no useful purpose and is neither fair or expedient. An unresolved question of fact would warrant further proceedings, but no such question remains here.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for immediate award of benefits.

IT IS SO ORDERED.

Dated this 28 day of March 2019.

_____
Ann Aiken
United States District Judge